IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

NAOMI A. MEYER,

    Plaintiff,

v.                                      Civil Action No. 3:10cv386

BODDIE-NOELL ENTERS., INC.
D/B/A HARDEE'S,

    Defendant.

## REPORT AND RECOMMENDATION

This matter comes before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) for a Report and Recommendation on Defendant Boddie-Noell Enterprises d/b/a Hardee's ("Boddie-Noell" or "Hardee's") Motion for Summary Judgment. (Docket No. 15.) Plaintiff Naomi A. Meyer has filed a response. (Docket No. 20.) On December 29, 2010, the Court heard oral arguments. The matter is ripe for disposition. The Court's jurisdiction is properly invoked under 28 U.S.C. §§ 1441, 1332.[1] For the following reasons, the undersigned Magistrate Judge RECOMMENDS that the Court GRANT Boddie-Noell's Motion for Summary Judgment.

### I. Factual and Procedural Background

    A.    **Undisputed Facts**

On September 19, 2008, between 8:00 and 8:15 a.m., Meyer met some friends for coffee at the Hardee's located at 1529 Parham Road, Richmond, Virginia. (Pl.'s Mem. Opp'n Def.'s

---

[1] The amount in controversy exceeds $75,000, and diversity of citizenship exists. 28 U.S.C. § 1332. Meyer is a citizen of Virginia, and Boddie-Noell is a North Carolina corporation with its principal place of business in North Carolina. (Notice of Removal ¶¶ 1-2.) (Docket No. 1.)

Mot. Summ. J. ("Mem. Opp'n") Ex. 6, Naomi A. Meyer Dep. ("Meyer Dep.") 7:10-14, 17:1-18.) Meyer left her table at approximately 8:40 or 8:45 a.m. to get another cup of coffee. (Meyer Dep. 7:15-20, 80:13-17.) After taking a few steps, her foot got stuck in a substance, causing her to fall and sustain injuries.[2] (Meyer Dep. 94:8-9, 95:22-25.) Meyer cannot describe the appearance of the substance because she never saw it, but she felt it. (Meyer Dep. 95:22-23, 109:5.)

Lila Hicks and Nancy Williams, friends of Meyer, both witnessed Meyer's accident. Hicks describes the substance that caused Meyer's fall as a sticky, dried-up film on the floor about the size of a salad plate. (Br. Supp. Ex. B, Lila Hicks Dep. ("Hicks Dep.") 19:1-25, 21:8-9.) While she cannot identify the substance, Hicks states it was a lighter gray in color and that you would not be able to see the substance unless you were standing directly over the spot. (Hicks Dep. 21:1-9, 23:9-11.) Williams describes the substance as a sticky, dried-up spot about the size of the ball of her foot. (Br. Supp. Ex. C, Nancy C. Williams Dep. ("Williams Dep.") 11:4-5, 16:5-10.) Williams did not see the spot prior to Meyer's accident and states that the substance had no color to it. (Williams Dep. 16:12-13, 17:2-22.)

Meyer, Hicks, and Williams do not know how long the substance was on the floor, when it got on the floor, or how it got on the floor. (Meyer Dep. 105:9-15; Hicks Dep. 22:6-10; Williams Dep. 12:1-9.) All three acknowledge that other customers aside from Meyer's group of friends were present at Hardee's that morning. (Meyer Dep. 107:1-7; Hicks Dep. 21:25-22:5; Williams Dep. 12:12-13.)

---

[2] For purposes of Boddie-Noell's Motion for Summary Judgment, Boddie-Noell does not dispute that Meyer has sufficient facts to present to the jury to show an injury. (Def.'s Br. Supp. Mot. Summ. J. ("Br. Supp.") 2 n.1.)

2

Christian Dendy worked for Hardee's as a cashier on the morning of Meyer's accident. (Mem. Opp'n Ex. 1, Christian Dendy Dep. ("Dendy Dep.") 4:8-16.) Dendy did not see the substance that caused Meyer's fall,[3] but at various times during his career with Hardee's, he had seen both soda and ketchup–which dripped from a ketchup pump Hardee's used–on the floor. (Dendy Dep. 8:22-23, 10:4-6, 10:22-11:11.)

Katina Harris worked for Hardee's as a manager on the morning of Meyer's accident. After Meyer's fall, Harris, following Hardee's policy, took pictures of the floor and the area where the accident occurred with a disposable camera. (Mem. Opp'n Ex. 4, Katina Harris Dep. ("Harris Dep.") 9:4-20; Dendy Dep. 13:4-19; Meyer Dep. 101:16-18.) Harris then mailed the camera to the home office. (Harris Dep. 9:4-20; Dendy Dep. 13:21-22.) Unfortunately, the envelope arrived at the home office with a tear, and the camera was missing. (Mem. Opp'n Ex. 3, Deborah Powell Dep. ("Powell Dep.") 12:14-19; 44:17-19.) Boddie-Noell employees discarded the envelope because they did not "think it needed to be preserved." (Powell Dep. 12:20-22; 51:2-3.)

Hardee's had a policy of using chemicals to clean the floor at closing, and the front area cashier mopped the floor at closing. (Powell Dep. 33:25-34:3; Harris Dep. 13:7-13.) Although

---

[3] While Boddie-Noell's employees on duty at the time of the accident testify that there was no sticky substance on the floor at the time of Meyer's accident, Boddie-Noell does not dispute the existence of a sticky substance on the floor for purposes of its Motion for Summary Judgment. Boddie-Noell correctly concedes that, when viewing the evidence in the light most favorable to Meyer, Meyer has presented sufficient evidence to show that a substance was present on the floor. Meyer has presented two witnesses, Hicks and Williams, who both state that they saw a substance on the floor, and although Meyer did not see the substance, she testified that she felt it. Further, Meyer, Hicks, and Williams testify that something on the floor caused Meyer's foot to stick, resulting in her fall. From this evidence, the Court presumes, for summary judgment purposes, that a substance was present on the floor at the time of Meyer's accident.

3

the manager on duty at the time of Meyer's accident had no knowledge of this fact, cleaning with improperly diluted chemical concentrates could leave deposits of film on the areas being cleaned. (Powell Dep. 29:9-23; Harris 22:3-5.) No evidence exists as to who mopped the floors at closing on the night before Meyer's accident, and no evidence suggests that Hardee's employees mixed the chemicals improperly on the night before Meyer's accident or at anytime. (Harris Dep. 21:20-22:10; Powell Dep. 35:17-19.) The Court lacks any evidence as to how the chemicals were mixed.

### B. Procedural Background

After her fall, Meyer filed a complaint in the Circuit Court of Henrico County against Boddie-Noell. Meyer alleges that Boddie-Noell negligently failed to eliminate or warn of a hazardous condition on the floor about which it knew or, by the use of ordinary care, should have known. (Compl. ¶¶ 4-7.) Boddie-Noell timely filed an answer. On June 8, 2010, Boddie-Noell filed a Notice of Removal in this Court. (Docket No. 1.)

Boddie-Noell now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). Boddie-Noell argues that Meyer has presented no admissible evidence that Boddie-Noell was on notice, actual or constructive, about the existence of the substance on the floor prior to Meyer's fall.[4] (Br. Supp. 1.) In response, Meyer contends that whether the substance on the floor was dried ketchup, barbeque sauce, or improperly diluted cleaning residue and whether Boddie-Noell had constructive notice of the substance on the floor both constitute disputed material facts. (Mem. Opp'n 4.) Meyer further asserts that this case warrants an

---

[4] Boddie-Noell also argues that Meyer has failed to establish that the substance on the floor constituted a dangerous or hazardous condition. (Br. Supp. 6-8.) The Court need not reach this argument because it grants summary judgment on other grounds.

4

adverse inference of negligence because Boddie-Noell willfully spoiled evidence. (Mem. Opp'n 8 n.20.)

## II. Standard of Review

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but instead must set forth specific facts illustrating genuine issues for trial. *Celotex*, 477 U.S. at 322-24. These facts must be presented in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled to have 'the credibility of his evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (*quoting Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). Ultimately, the court must adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (*citing Celotex*, 477 U.S. at 323-24).

## III. Analysis

A court exercising diversity jurisdiction applies the substantive law of the forum state. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78-79 (1938); *Cole v. Food Lion, L.L.C.*, 370 F. Supp. 2d 434, 436 (E.D. Va. 2005). In Virginia, to establish a prima facie negligence claim, a plaintiff bears the burden of proving "the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage." *Atrium Unit Owners Ass'n v. King*, 585 S.E.2d 545, 548 (Va. 2003); *see also Trimyer v. Norfolk Tallow Co.*, 66 S.E.2d 441, 443 (Va. 1951). As the Supreme Court of Virginia has articulated, "'[t]he rules applicable to slip-and-fall cases are well settled.'" *Winn-Dixie Stores, Inc. v. Parker*, 396 S.E.2d 649, 650 (Va. 1990) (*quoting Colonial Stores v. Pulley*, 125 S.E.2d 188, 190 (Va. 1962)).

> "The [store owner] owed the [customer] the duty to exercise ordinary care toward her as its invitee upon its premises. In carrying out this duty it was required to have the premises in a reasonably safe condition for her visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn the [customer] of the unsafe condition if it was unknown to her, but was, or should have been known, to the [store owner]."

*Id.* (*quoting Pulley*, 125 S.E.2d at 190 (alterations in original)).

A prima facie case of premises liability requires first that the plaintiff prove the existence of an unsafe or dangerous condition.[5] *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 451 (4th Cir. 2004). Next, "a plaintiff must, in order to establish a defendant's negligence, prove '*why*

---

[5] Boddie-Noell contends that a sticky floor that *increases* traction cannot support a claim by Meyer that it was unsafe, thereby defeating this prong of Meyer's claim. Boddie-Noell asserts that a "stick and fall" differs materially from a "slip and fall," where a slick surface inherently creates danger. Because the gravamen of the dispute before the Court rests on notice, the Court presumes without deciding, for summary judgment purposes only, that the first prong of the prima facie test has been met.

and *how* the incident happened.'" *Id.* at 451 *(quoting Town of West Point v. Evans,* 299 S.E.2d 349, 351 (Va. 1983)). Where a plaintiff lacks evidence as to why an injury occurred, he or she may present evidence of the defendant's actual or constructive notice. *Id.* at 452.

### A. Actual Notice

Meyer fails to establish that Boddie-Noell had actual notice of the unsafe condition that resulted in Meyer's injuries. The record before the Court is bereft of any evidence showing Boddie-Noell's actual notice of the substance on the floor prior to Meyer's fall, and evidence before the Court suggests that one could not see the substance unless standing directly over the spot. (Hicks Dep. 23:9-11.) Therefore, Meyer must establish that Boddie-Noell had constructive notice of the unsafe condition resulting in her injuries. *See Colonial Stores,* 125 S.E.2d at 190. Indeed, Meyer's response focuses only on whether Boddie-Noell had constructive knowledge of the substance on the floor.

### B. Constructive Notice

In an attempt to overcome summary judgment, Meyer asserts two separate theories to prove constructive notice. Meyer first argues that evidence exists to suggest that the substance was dried ketchup or barbeque sauce. Meyer then contends that constructive notice can be imputed to Boddie-Noell based on the dried condition of the ketchup or barbeque sauce, and on the fact that Boddie-Noell knew that its customers regularly spilled ketchup on the floor. Second, Meyer argues that evidence suggests that the substance on the floor resulted from improper dilution of Boddie-Noell's floor cleaning concentrates. Under this theory, constructive notice can be imputed to Boddie-Noell because its employees affirmatively caused the unsafe condition. As detailed below, the Court finds that, even viewing the evidence most favorably to

7

Meyer, Meyer fails to establish that Boddie-Noell had constructive notice of the unsafe condition that caused her accident and subsequent injuries.

Meyer inappropriately poses a false dichotomy in its briefing and cannot survive this summary judgment motion. In posing that the substance was either ketchup, barbeque sauce, or a film from improper cleaning, Meyer limits the options as to what the substance might be beyond what this record can allow her to do. The Court has no admissible evidence as to what the substance was, meaning that in addition to the products Meyer describes, the sticky substance also could have been any number of substances spilled by a customer who then attempted to clean it up. These could include: dried soda, sugared coffee, orange juice, or syrup. Each of these items could have been spilled and cleaned by a customer (without management's knowledge) who left the Hardee's before Meyer arrived.

While the Court does not require Meyer to disprove every possible alternative source of the spill, Virginia law requires that she show some evidence of a specific source, and her efforts to do so in this case falter.

### 1. Meyer Has Not Presented Admissible Evidence to Show that the Substance on the Floor was Dried Ketchup or Barbeque Sauce

To prove constructive notice, a plaintiff may introduce "evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition." *Grim v. Rahe, Inc.*, 434 S.E.2d 888, 890 (Va. 1993). Thus, a prima facie case requires evidence of when an unsafe condition developed. *Id.*

To carry her burden, Meyer attempts to argue that the substance on the floor consisted of dried ketchup or barbeque sauce. Relying on *Davis v. Spotsylvania Mall Co.*, No. CL95-477,

1997 WL 1070525 (Va. Cir. Ct. Feb. 19, 1997), Meyer argues that the Court can reasonably infer from its dried-out condition that the ketchup or barbeque sauce had been on the floor for a considerable period of time sufficient to impute constructive notice. However, unlike in *Davis*, Meyer has failed to point to any admissible evidence showing that the substance could be ketchup or barbeque sauce.

Although Meyer contends that the substance on the floor was dried ketchup or barbeque sauce, the record does not support this assertion. Meyer admits that she cannot describe the appearance of the substance on the floor because she never saw it. (Meyer Dep. 95:22-23, 109:5.) The only admissible descriptions of the substance come directly from Hicks and Williams. Hicks cannot identify the substance, but describes it as a sticky, light gray, dried film. (Hicks Dep. 19:1-25, 21:8-9.) Williams describes the substance as a sticky, dried spot without any color to it. (Williams Dep. 11:4-5, 16:5-13, 17:2-22.) These descriptions do not suggest a reasonable inference that the substance was dried-up ketchup or barbeque sauce.

While Meyer testifies that Hicks and Williams "said [the substance] was something sticky [that] looked like dried up" ketchup or barbeque sauce, this statement constitutes inadmissible hearsay. (Meyer Dep. 104:12-16.) Thus, from the undisputed, admissible evidence before this Court regarding the description of the substance that caused Meyer's fall, the Court cannot reasonably infer that the substance was dried ketchup or barbeque sauce. Because the substance cannot be identified, the Court cannot impute constructive notice to Boddie-Noell based solely on its dried condition.[6] *Haliburton v. Food Lion, LLC*, No. 3:07cv622, 2008 WL 1809127, *3

---

[6] At the December 29, 2010 hearing, Meyer argued that it does not matter what the substance on the floor was because the Court can logically infer from its dried-up, sticky condition that it was on the floor for an unreasonable amount of time and thus impute

(E.D. Va. Apr. 21, 2008); *Woods v. Wal-Mart Stores, Inc.*, No. 3:05cv48, 2005 WL 2563178, at *3 (E.D. Va. Oct. 12, 2005).

Further, the Court finds Meyer's argument that constructive notice can be imputed because Boddie-Noell knew that ketchup regularly spilled on its floor to be unpersuasive. While an employee states that he had in the past seen ketchup and soda spills on the floor, Meyer asserts no evidence that Boddie-Noell knew of this particular substance on the floor on the day of Meyer's accident. Meyer also does not create a material dispute via this testimony. A single witness testifying in general terms as to past events creates far too tenuous a tether for this Court to find that Meyer establishes a material dispute about the events that occurred on September 19, 2008. Meyer has not satisfied her burden of showing constructive notice merely by suggesting that Boddie-Noell was on notice of a general recurring dangerous condition caused by spilled ketchup. *See Hodge*, 360 F.3d at 449; *Woods*, 2005 WL 2563178, at *3. If the Court found otherwise, nearly any workplace with a regular cleaning schedule would be on constructive notice of substances on the floor between cleanups. This Court reads Virginia law, in the absence of any affirmative conduct by Boddie-Noell, as requiring more specific proof than that.

---

constructive notice onto Boddie-Noell. This argument misstates Virginia law, which requires proof of *when* an unsafe condition developed to show constructive notice. *See Grim*, 434 S.E.2d at 890; *Woods v. Wal-Mart Stores, Inc.*, No. 3:05cv48, 2005 WL 2563178, at *3 (E.D. Va. Oct. 12, 2005).

The dried-up nature of the substance is not enough under Virginia law. Absent any evidence from which the Court can make a logical inference as to the identity of the substance, the Court cannot impute constructive notice onto Boddie-Noell based on the substance's dried-up condition because common sense informs the Court that different substances dry at different rates. Virginia law places the burden on Meyer to establish that the unsafe condition existed for a sufficient period of time to charge Boddie-Noell with constructive notice, meaning she must have some evidence as to the nature of the substance and the length of time it would take to dry, or reasonable inferences therefrom.

Regardless, as discussed above, no admissible evidence exists by which this Court could reasonably infer that the substance on the floor consisted of any one of those substances over another.

Ultimately, Meyer has failed to point to any evidence regarding how the substance got on the floor or how long the substance remained on the floor. Virginia law requires that she do so to carry her burden of proving that Boddie-Noell was on constructive notice. *Parker*, 396 S.E.2d at 651; *Pulley*, 125 S.E.2d at 190 (stating that it was "incumbent upon the plaintiff to prove that the defendant knew [the dangerous condition] was there, or, to show that the [item] had been there long enough that the defendant ought to have known of its presence"). "Hence, if the evidence fails to show *when* a defect occurred on the premises, the plaintiff has not made out a *prima facie* case." *Grim*, 434 S.E.2d at 890 (*citing Parker*, 396 S.E.2d at 651).

Meyer, Hicks, and Williams do not know how long the substance was on the floor, when it got on the floor, or how it got on the floor. (Meyer Dep. 105:9-15; Hicks Dep. 22:6-10; Williams Dep. 12:1-9.)

> "There is no evidence in this case that [the defendant] knew of the presence of the [item] on the floor, nor is there any showing of the length of time it may have been there. It is just as logical to assume that it was placed on the floor an instant before [the plaintiff] struck it as it is to infer that it had been there long enough that [the defendant] should, in the exercise of reasonable care, have known about it."

*Parker*, 396 S.E.2d at 651 (*quoting Pulley*, 125 S.E.2d at 190). Here, even viewing the evidence favorably to Meyer, the Court cannot infer what substance might have been on the ground. Therefore, especially given some inconsistent testimony regarding the size of the spill, the Court cannot reasonably infer how long the substance was there before Meyer encountered it. Absent sufficient circumstantial evidence of when the unsafe condition was created, Meyer cannot

establish that a sufficient amount of time passed to provide Boddie-Noell constructive notice of the condition, which is a required component of her prima facie case. *See Hodge*, 360 F.3d at 454. This is especially true given Hicks's statement–offered on behalf of Meyer–that the substance could only be seen if you looked at it directly from above.

> 2. **Meyer Has Not Presented Any Evidence to Allow the Court to Reasonably Infer that the Substance on the Floor Resulted from <u>Improper Dilution of Boddie-Noell's Floor Cleaning Concentrates</u>**

Meyer next contends that the unsafe condition on the floor resulted from Boddie-Noell's affirmative conduct, specifically improperly diluting its floor cleaning concentrates. Virginia law distinguishes between cases where a plaintiff alleges negligence from a defendant's "affirmative conduct," and cases where a plaintiff alleges negligence from a defendant's "passive conduct." *See Ashby v. Faison & Assocs., Inc.*, 440 S.E.2d 603, 605 (Va. 1994). Allegations of "affirmative conduct" involve cases in which a defendant was the "genesis" of the dangerous condition. *Goehler v. Wal-Mart Stores, Inc.*, No. 99-2057, 2000 WL 1161700, at *2 (4th Cir. Aug. 17, 2000) (unpublished). In "affirmative conduct" cases, notice is found where "'an ordinarily prudent person, given the facts and circumstances [the defendant] knew or should have known, could have foreseen the risk of danger resulting from such circumstances.'" *Id.* (citing *Memco Stores, Inc. v. Yeatman*, 348 S.E.2d 228, 230 (Va. 1986)) (alteration in original). In addition, "the foreseeability of the danger . . . [is] the relevant question for [a] jury to consider in determining whether [a] defendant [has] been negligent." *O'Brien v. Everfast, Inc.*, 491 S.E.2d 712, 715 (Va. 1997) (citing *Holcombe v. NationsBanc Fin. Servs. Corp.*, 450 S.E.2d 158, 160 (Va. 1994)) (finding knowledge of the potential danger created by bolts of fabric leaning on a cutting table sufficient to support a jury finding of negligence).

12

However, the record before the Court contains no evidence that would allow a reasonable inference that the substance resulted from Boddie-Noell's improper dilution of cleaning concentrates. The Court is not persuaded otherwise by Meyer's reliance on *Austin v. Shoney's Inc.*, 486 S.E.2d 285 (Va. 1997), or *Memco Stores, Inc. v. Yeatman*, 348 S.E.2d 228 (Va. 1986). In *Austin*, the defendant's employees "conceded that they used levels of concentration of detergent to water considerably lower than was recommended by the manufacturer for cleaning" the tile floor. *Austin*, 486 S.E.2d at 286. Additionally, the defendant admitted that employees did not follow instructions calling for weekly floor "shock treatments." *Id.* In *Austin*, the plaintiff presented expert testimony that the actual concentration of the cleaning products used by the defendant's employees would not effectively remove grease from the floor of the restaurant. *Id.* Thus, the *Austin* court had before it admissible evidence showing that the defendant, near the time of the accident, failed to follow the recommended procedures for cleaning the floor. *Id.* at 288. The court could logically infer that the defendant's affirmative conduct created the grease-like film on the floor which caused the plaintiff's fall. *Id.*

In *Yeatman*, the plaintiff had slipped on a plant leaf in the aisle of a store and presented evidence that the defendant moved a peperomia plant from an outside patio to an inside display near the aisle. *Yeatman*, 348 S.E.2d at 230. The plaintiff then presented expert testimony that changes in location, temperature, and light cause harm to the peperomia plant, resulting in a tendency to shed its leaves. *Id.* The court found that, from this evidence, the jury could logically have found that the defendant, "a merchandiser of peperomia plants, should have known that a change in location, temperature, and light would cause such a succulent plant to shed moist leaves." *Id.* at 231. Because the defendant acted in moving the plant inside, the jury could have

13

reasonably inferred that the defendant should have foreseen the risk of harm the shedding leaves would cause to its customers. *Id.*

Unlike *Austin*, Meyer fails to show that Boddie-Noell employees *actually* used improperly diluted chemicals to clean the floor, and unlike *Yeatman*, Meyer fails to show that Boddie-Noell employees affirmatively created the hazardous condition on the floor. The person who mopped the floor at closing the day before Meyer's accident is unknown to the Court, and no evidence suggests that this person used improper concentrations while mopping the floor. (Harris Dep. 21:20-22:10; Powell Dep. 35:17-19.) Thus, while evidence before the Court suggests that improper cleaning procedures could result in deposits of film on the floors, the Court would have to engage in speculation to find that what happened here is the improper dilution Meyer suggests. Although the manager on duty did not know that improper dilution could leave film deposits on the floor, the Court would have to engage in speculation to find from this fact alone that the unknown person who mopped the floor the night before Meyer's accident improperly diluted the cleaning chemicals, thereby affirmatively leaving an unsafe condition in the workplace.

Meyer's assertion otherwise requires inferences beyond those this Court may draw under summary judgment standards, even when viewing the facts favorably to Meyer. *See Sylvia Dev. Corp.*, 48 F.3d at 818. Nor does she create a genuine dispute of material fact. "Genuine issues of material fact cannot be based on mere speculation or the building of one inference upon another." *Barwick v. Celotex Corp.*, 736 F.2d 946, 963 (4th Cir. 1984). Meyer argues evidence as to what *could* happen if improper dilution occurs, but she offers no evidence as to the *actual* cleaning procedure that did or did not happen near the time of the accident. (Powell Dep. 29:9-

23, 35:17-19; Harris Dep. 21:20-22:10.) This Court finds that Virginia law requires more evidence to show constructive knowledge. Meyer cannot overcome summary judgment by relying on speculation. *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001) ("Mere speculation by the non-moving party cannot create a genuine issue of material fact."); *Great Atl. & Pac. Tea Co. v. Berry*, 128 S.E.2d 311, 313 (Va. 1962) ("The plaintiff cannot be said to have made out a case for the jury when it is necessary for the jury to speculate or guess in order to allow her a recovery."). Viewing the evidence in the light most favorable to Meyer and considering competing inferences to the contrary, the Court cannot make a reasonable inference from the record that the substance resulted from Boddie-Noell's improper cleaning methods.

### C. Spoliation of Evidence

Meyer finally argues that this Court should find that spoliation of evidence occurred in this case because Boddie-Noell "willfully mailed the camera that had been used to photograph the area where [Meyer] fell without taking steps to preserve the photographs" and because Boddie-Noell "willfully destroyed the envelope that allegedly arrived at its corporate headquarters with a hole but no camera that could have corroborated [Boddie-Noell's] suspicious contention that the postal service lost the camera used to photograph the area where [Meyer] fell." (Mem. Opp'n 8 n.20.) Meyer contends that the Court should infer bad faith from the destruction of the envelope and draw an adverse inference of negligence against Boddie-Noell.

The gravamen of Meyer's complaint in this regard is that Boddie-Noell witnesses contend that no substance was visible, while the Company simultaneously contends that she has failed to show the nature of the substance despite it being her burden to do so. Meyer suggests this Court

should not allow Boddie-Noell to take such positions when they lost independent photographic evidence regarding the nature of the substance.

Presuming that an adverse inference can be drawn at summary judgment where the party concedes a sticky substance present, the Court remains unpersuaded by Meyer's argument. The only willful destruction before the Court is of an envelope, whose existence would only have served to confirm sworn testimony that the camera had been ripped out prior to receipt by Boddie-Noell. The Court has no evidence of willful destruction of the camera by any Boddie-Noell employee, nor will it infer any.

"The spoliation of evidence rule allows the drawing of an adverse inference against a party whose intentional conduct causes not just the destruction of evidence . . . but also against one who fails to preserve or produce evidence." *Hodge*, 360 F.3d at 450 (*citing Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155-56 (4th Cir. 1995); *NLRB v. Ford Radio & Mica Corp.*, 258 F.2d 457, 463 (2d Cir. 1958)). This inference "'cannot be drawn merely from [the] negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his [or her] willful conduct resulted in its loss or destruction.'" *Id.* (*quoting Vodusek*, 71 F.3d at 156). A court must also find that "'the evidence would have been relevant to an issue at trial and otherwise would naturally have been introduced into evidence.'" *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 286 (E.D. Va. 2001) (*quoting Vodusek*, 71 F.3d at 156). The moving party bears the burden of showing that "the adverse party had a duty to preserve the allegedly spoiled [evidence] and that the [evidence was] intentionally destroyed." *Id.*

Meyer first argues that Boddie-Noell violated its duty to preserve the photographs of the area where Meyer fell by mailing the camera to its home office without taking steps to ensure its safe arrival. However, Meyer presents no evidence that Boddie-Noell intentionally lost the camera or exercised bad faith in packaging and mailing the camera. The record before the Court shows the opposite: that Boddie-Noell had used regular mail in the past without problem or incident. (Powell Dep. 10:7-11:1.) Meyer has not met her burden in showing intentional, bad faith destruction of the camera.[7]

Next, Meyer asserts that the Court should grant her a spoliation inference because Boddie-Noell failed to preserve the envelope that arrived at the home office with a tear and the camera missing. Meyer suggests that the Court can infer bad faith from the fact that Boddie-Noell discarded the envelope. As noted above, the envelope would have served only to confirm sworn testimony before the Court, meaning that this record cannot support an adverse inference. Meyer has failed to show that Boddie-Noell exercised bad faith in not preserving the envelope. To the extent Meyer asks this Court to draw an adverse inference during summary judgment, and to the extent such an inference could be drawn, the Court declines to grant this spoliation motion given the record at bar.

---

[7] Further, while photographs of the spill would undoubtedly be relevant in this case by providing additional evidence either supporting or contradicting Meyer's theory of the case, the record already includes some description of the size and color of the spill from Hicks and Williams. Given the nature of their testimony, it is not clear that Meyer can show how the loss of the camera prejudices her. *See Trigon Ins. Co.*, 204 F.R.D. at 286 ("The natural consequence of spoliation is that the moving party was prejudiced by the destruction.").

## IV. Conclusion

For the foregoing reasons, the undersigned Magistrate Judge RECOMMENDS that the Court GRANT Boddie-Noell's Motion for Summary Judgment (Docket No. 15) and DISMISS WITH PREJUDICE Meyer's Complaint against Boddie-Noell.

The parties are ADVISED that they may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Each objection should be labeled with the corresponding heading from the Report and Recommendation, should be numbered, and should identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. Failure to file specific objections to the Report and Recommendation in a timely manner may result in the entry of an Order dismissing the complaint. *See* Fed. R. Civ. P. 72(b). It may also preclude further review or appeal from such order. *See Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

Let the Clerk send copies of this Report and Recommendation to counsel of record and the Honorable Robert E. Payne.

It is so ORDERED.

/s/ M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: /- 5-11